FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 20, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON R.,[1] | No. 1:20-cv-03140-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 17, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17, 18.  The parties consented to proceed before a magistrate judge.  ECF No. 5.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

10    decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

11    *Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

13    A claimant must satisfy two conditions to be considered "disabled" within

14    the meaning of the Social Security Act. First, the claimant must be "unable to

15    engage in any substantial gainful activity by reason of any medically determinable

16    physical or mental impairment which can be expected to result in death or which

17    has lasted or can be expected to last for a continuous period of not less than twelve

18    months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

19    "of such severity that he is not only unable to do his previous work[,] but cannot,

20    considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 18, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of July 1, 2013.  Tr. 15, 56, 127-28.  The application was denied initially, and on reconsideration. Tr. 77-80, 86-88.  Plaintiff appeared before an administrative law judge (ALJ) on June 7, 2019.  Tr. 35-55.  On July 2, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 18, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: history of substance abuse and depression.  *Id.*

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform the full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] is limited to simple, repetitive, routine tasks with no more than brief, superficial contact with the general public.

Tr. 19.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 28. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as agricultural produce packer, industrial cleaner, and store laborer. Tr. 29. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On July 15, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

    1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

    2.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 2.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 17 at 4-8.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

ORDER - 8

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

5    omitted).  General findings are insufficient; rather, the ALJ must identify what

6    symptom claims are being discounted and what evidence undermines these claims.

7    *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

8    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

9    explain why it discounted claimant's symptom claims)).  "The clear and

10   convincing [evidence] standard is the most demanding required in Social Security

11   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

12   *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

13       Factors to be considered in evaluating the intensity, persistence, and limiting

14   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

15   duration, frequency, and intensity of pain or other symptoms; 3) factors that

16   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

17   side effects of any medication an individual takes or has taken to alleviate pain or

18   other symptoms; 5) treatment, other than medication, an individual receives or has

19   received for relief of pain or other symptoms; 6) any measures other than treatment

20   an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 20.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 20-25.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

1    The ALJ found Plaintiff's statements regarding the intensity, persistence,

2    and limiting effects of his symptoms were not consistent with the treatment

3    records.  Tr. 20.  While Plaintiff had some abnormalities on examination

4    throughout the record, the ALJ noted Plaintiff often had normal mood, affect,

5    thoughts, orientation, eye contact, grooming, attention/concentration, memory,

6    cognitive functioning, and speech.  Tr. 20-22 (citing, e.g., Tr. 385, 400, 441-42, 23,

7    457, 463, 469-70, 44-45, 476, 488-89, 564, 567).  Plaintiff also had improvement

8    with treatment.  Tr. 21-23 (citing Tr. 417, 433, 470, 476, 492, 514).  Even when he

9    discontinued his medications, Plaintiff reported no issues with his symptoms, and

10    he continued to have a generally normal mental status examination.  Tr. 23 (citing

11    Tr. 447, 449-50).  Plaintiff argues the ALJ's analysis of the evidence fails to point

12    to inconsistent medical evidence, as it includes evidence of Plaintiff's abnormal

13    mental status findings as well.  ECF No. 17 at 6-8.  Despite periods of abnormal

14    symptoms, such as a few weeks when Plaintiff reported paranoia in February 2019,

15    Tr. 460, the ALJ outlined Plaintiff's improvement with treatment and periods of

16    normal mental status findings, Tr. 23-24.  On this record, the ALJ reasonably

17    concluded that the objective medical evidence was inconsistent with Plaintiff's

18    symptom claims.  This finding is supported by substantial evidence and was a clear

19    and convincing reason, along with the other reason offered, to discount Plaintiff's

20    symptom complaints.

ORDER - 11

### 2.  Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's activities of daily living.  Tr. 20-23. The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's statement about his symptoms are inconsistent with the treatment records, which document Plaintiff's activities of daily living.  Tr. 20.  The ALJ noted Plaintiff attended two support meetings per week, and he interacted with others and participated at times in group meetings.  Tr. 18, 22 (citing Tr. 398, 416, 420).  Plaintiff occasionally visited a friend and reported helping a friend move things to prepare for an inspection, and Plaintiff reported playing poker.  Tr. 18, 20 (citing Tr. 251, 398, 404, 408).  Plaintiff assists with household chores including cleaning and handling most of the cooking, and assists

with caring for his mother, who is disabled.  Tr. 20, 22, 23 (citing Tr. 398, 440, 488).  Plaintiff volunteered at a gym two days per week, totaling fourteen hours per week, which enabled him to receive a free gym pass.  Tr. 20, 22 (citing Tr. 492, 494, 498).  Plaintiff also worked one day per week on his community service.  Tr. 22 (citing Tr. 494,498).  He reported planning to perform a small job with his father.  Tr. 21 (citing Tr. 423).  He is able to go to the store, walk places, and use public transportation.  Tr. 20, 22 (citing Tr. 500).  Plaintiff reported engaging in hobbies including rock collecting, hiking, fishing, and exercising.  Tr. 22 (citing Tr. 476).  Plaintiff described himself as generally active.  Tr. 21 (citing Tr. 417).

Plaintiff argues the ALJ did not make specific findings as to how the treatment records contradict Plaintiff's allegations.  ECF No. 18 at 5-8, ECF No. 19 at 2.  Defendant argues the Court can reasonably infer from the decision as a whole that the ALJ found Plaintiff's activities of daily living were inconsistent with Plaintiff's allegations outlined earlier in the decision.  ECF No. 18 at 7.  While the Court acknowledges the format of the ALJ's decision is not ideal, the Court finds the ALJ's evaluation of Plaintiff's symptom claims is supported by clear and convincing evidence.  *See Molina*, 674 F.3d at 1121 ("Even when an agency 'explains its decision with 'less than ideal clarity,'' we must uphold it 'if the agency's path may reasonably be discerned.").  The ALJ pointed to specific allegations, such as Plaintiff's claim that he often cannot leave his home, and he

ORDER - 13

leaves his home only two to three times per month, Tr. 20, which are conflicted by

Plaintiff's activities that required he leave his home three or more times per week,

Tr. 20, 22.  On this record, the ALJ reasonably concluded that Plaintiff's activities

of daily living were inconsistent with his symptom claims.  This finding is

supported by substantial evidence and was a clear and convincing reason to

discount Plaintiff's symptom complaints.

### 3. Work History

The ALJ found Plaintiff's symptom's claims were inconsistent with his

work history.  Tr. 21-22.  Evidence of a poor work history that suggests a claimant

is not motivated to work is a permissible reason to discredit a claimant's testimony

that she is unable to work.  *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to

consider in evaluating credibility include "prior work record and efforts to work");

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 20 C.F.R. §

416.929 (work record can be considered in assessing credibility).  Additionally, an

ALJ may consider that a claimant stopped working for reasons unrelated to the

allegedly disabling condition when weighing the claimant's symptom reports.

*Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Here, the ALJ noted Plaintiff reported he was no longer working due to an

inability to get to the last job he had, and he was unwilling to work at McDonald's

again.  Tr. 21 (citing Tr. 426).  Plaintiff reported he was unable to find work due to

ORDER - 14

1  a limited employment market, and because of a fear for his safety as he was

2  considered an informant.  Tr. 24 (citing Tr. 346).  Plaintiff also reported his last job

3  ended due to not getting along with his boss.  Tr. 346.  While Plaintiff reported

4  declining a job offer due to fear he could not complete an eight-hour workday, Tr.

5  22 (citing Tr. 484), Plaintiff reported volunteering at a gym for two seven-hour

6  shifts per week, Tr. 20, 22 (citing Tr. 492, 494, 498).  Additionally, Plaintiff

7  alleges disability beginning in 2013, but has never earned SGA for an entire year,

8  even before his alleged onset date.  *See* Tr. 129-30.  The ALJ noted Plaintiff has

9  displayed little motivation to obtain employment, complete his community service

10  hours, or change his behaviors.  Tr. 18, 23 (citing Tr. 408, 465).  On this record,

11  the ALJ reasonably concluded that Plaintiff's work history is inconsistent with his

12  symptom claims.  This finding is supported by substantial evidence and was a clear

13  and convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not

14  entitled to remand on these grounds.

15  **B. Medical Opinion Evidence**

16  Plaintiff contends the ALJ erred in his analysis of the opinions of Nora

17  Marks, Ph.D.; Brian VanFossen, Ph.D.; and Jeff Albin, M.S., DMHP.

18  As an initial matter, for claims filed on or after March 27, 2017, new

19  regulations apply that change the framework for how an ALJ must evaluate

20  medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

ORDER - 15

*Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give

any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*,

2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of

medical opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-

(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether the "clear and convincing" and "specific and legitimate" standards still apply.  ECF No. 17 at 11-18; ECF No. 18 at 8-10; ECF No. 19 at 3-5.  "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."

ORDER - 17

1  *Gary T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June

2  29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at

3  *3 (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must

4  defer to the new regulations, even where they conflict with prior judicial precedent,

5  unless the prior judicial construction 'follows from the unambiguous terms of the

6  statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

7  3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

8  Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

9  Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

10 unless 'they exceeded the Secretary's authority [or] are arbitrary and

11 capricious.'").

12     There is not a consensus among the district courts as to whether the "clear

13 and convincing" and "specific and legitimate" standards continue to apply.  *See,*

14 *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

15 Nov. 10, 2020) (applying the specific and legitimate standard under the new

16 regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

17 Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

18 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

19 regulations displace the treating physician rule and the new regulations control);

20 *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and legitimate nor clear and convincing standard).  For the sake of consistency in this District, the Court adopts the rationale and holding articulated on the issue in *Emilie K. v. Saul*, No. 2:20-cv-00079-SMJ, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021), *appeal docketed*, No. 21-35360 (9th Cir. May 10, 2021).  In *Emilie K.*, this Court held that the ALJ did not err in applying the new regulations over Ninth Circuit precedent, because the result did not contravene the Administrative Procedure Act's requirement that decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record."  *Id.* at *4 (citing 5 U.S.C. § 557(c)(A)).  This rationale has been adopted in other cases with this Court.  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

   *1.  Dr. Marks*

   Dr. Marks, an examining psychologist, examined Plaintiff and rendered opinions on Plaintiff's functioning on two occasions.  Tr. 176-81, 344-53.

a.  January 2015 Opinion

On January 8, 2015, Dr. Marks diagnosed Plaintiff with attention-deficit hyperactivity disorder, combined type; cannabis dependence in remission; schizoaffective disorder, depressive type; major depressive disorder, recurrent, moderate, by history; social phobia; and post-traumatic stress disorder.  Tr. 178. Dr. Marks opined Plaintiff has moderate limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions, and learn new tasks; marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, perform routine tasks without special supervision, adapt to changes in routine work settings, make simple work-related decisions, and ask simple questions or request assistance; and severe limitations in his ability to be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, complete a normal workday/workweek without interruptions from psychologically-based symptoms, maintain appropriate behavior in a work setting, and set realistic goals and plan independently.  Tr. 178-79.  She opined Plaintiff's limitations were expected to last 12 to 36 months with

ORDER - 20

1  available treatment, and his impairments were not primarily the result of

2  drug/alcohol use.  Tr. 179.  The ALJ found the opinion was not persuasive.  Tr. 25.

3       First, the ALJ found the opinion was based solely on Plaintiff's subjective

4  allegations.  *Id.*  As supportability is one of the most important factors an ALJ must

5  consider when determining how persuasive a medical opinion is, 20 C.F.R. §

6  416.920c(b)(2), a medical provider's reliance on a Plaintiff's unsupported self-

7  report is a relevant consideration when determining the persuasiveness of the

8  opinion.  Dr. Marks' evaluation included a clinical interview and consideration of

9  Plaintiff's self-reported symptoms, Tr. 176-78, however it also included a review

10  of medical records, Tr. 176, and a mental status examination, Tr. 180-81.  Dr.

11  Marks' explanations discussed the objective evidence she considered in finding

12  abnormalities on examination.  Tr. 180-81.  As such, the ALJ's finding that Dr.

13  Marks' opinion was based solely on Plaintiff's subjective allegations is not

14  supported by substantial evidence.  However, the error is harmless as the ALJ gave

15  a supported reason to reject Dr. Marks' opinion.  *See Molina,* 674 F.3d at 1115.

16       Second, the ALJ found the opinion was inconsistent with the objective

17  medical evidence.  Tr. 25-26.  Consistency is one of the most important factors an

18  ALJ must consider when determining how persuasive a medical opinion is.  20

19  C.F.R. § 416.920c(b)(2).  The more consistent the is with evidence from other

20  medical sources, the more persuasive the medical opinion is.  20 C.F.R. §

ORDER - 21

416.920c(c)(2). The ALJ found Dr. Marks' opinion was inconsistent with records documenting Plaintiff's generally normal mental status examinations. Tr. 25-26 (citing Tr. 400, 441-42, 455, 476-77, 488-89, 564). Plaintiff argues his later normal presentation at examinations is not a valid reason to reject Dr. Marks' opinion and argues his symptoms wax and wane. ECF No. at 17 at 11-12. However, the consistency of Dr. Marks' opinion with other evidence in the record is a relevant consideration. *See* 20 C.F.R. § 416.920c(c)(2). There are numerous normal mental status examinations in the record, as indicated by the ALJ. Tr. 25-26. Plaintiff also had improvement with treatment. Tr. 23-24. While Plaintiff points to periods in which Plaintiff had self-reported symptoms and some abnormal examinations and offers a different interpretation of the evidence, ECF No. 17 at 6-9, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record, *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ's finding that Dr. Marks' opinion is inconsistent with the medical evidence was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Marks' opinion. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

1    Lastly, the ALJ found Dr. Marks failed to support the opinion with an

2    explanation or references to the medical record.  Tr. 26.  Supportability is one of

3    the most important factors an ALJ must consider when determining how

4    persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more relevant

5    objective evidence and supporting explanations that support a medical opinion, the

6    more persuasive the medical opinion is.  20 C.F.R. § 416.920c(c)(1).  Dr. Marks'

7    checkbox opinion does not contain an explanation as to why Plaintiff has marked

8    to severe limitations, Tr. 179, although Dr. Marks' opinion is accompanied by a

9    mental status examination and review of medical records, Tr. 176, 180-81.  Any

10   error in finding Dr. Marks' opinion is not supported by an explanation or citations

11   is harmless as the ALJ gave a supported reason to reject Dr. Marks' opinion.  *See*

12   *Molina,* 674 F.3d at 1115.

13         b.  July 2017 Opinion

14   On July 20, 2017, Dr. Marks diagnosed Plaintiff with attention-deficit

15   hyperactivity disorder, combined type; borderline intellectual functioning; social

16   anxiety disorder (social phobia); amphetamine (or other stimulant)-induced

17   psychotic disorder without use disorder; and cannabis intoxication, with perceptual

18   disturbances, without use disorder.  Tr. 348.  Dr. Marks opined Plaintiff had

19   marked limitations in his ability to understand, remember, and persist in tasks by

20   following very short and simple instructions, perform activities within a schedule,

ORDER - 23

1  maintain regular attendance and be punctual within customary tolerances without

2  special supervision, learn new tasks, perform routine tasks without special

3  supervision, adapt to changes in a routine work setting, make simple work-related

4  decisions, and ask simple questions or request assistance; and severe limitations in

5  his ability to understand, remember, and persist in tasks by following detailed

6  instructions, be aware of normal hazards and take appropriate precautions,

7  communicate and perform effectively in a work setting, maintain appropriate

8  behavior in a work setting, complete a normal workday/workweek without

9  interruptions from psychologically-based symptoms, and set realistic goals and

10  plan independently.  Tr. 348-49.  Dr. Marks opined Plaintiff's impairments overall

11  had a severe rating, his impairments were not primarily the result of drug or

12  alcohol use, and the limitations were expected to last 12 months with available

13  treatment.  Tr. 349.  The ALJ found the opinion was not persuasive.  Tr. 26.

14      First, the ALJ found Dr. Marks did not support her opinion with an

15  explanation or references to the medical records.  Tr. 26.  Supportability is one of

16  the most important factors an ALJ must consider when determining how

17  persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more supporting

18  explanations that support a medical opinion, the more persuasive the medical

19  opinion is.  20 C.F.R. § 416.920c(c)(1).  The ALJ noted Dr. Marks' opinion

20  consists of a checkbox form, without any explanation or citations to medical

ORDER - 24

records.  Tr. 26.  The opinion portion of the evaluation contains only the checkbox

form, without any explanation for the marked and severe limitations.  Tr. 348-49.

Dr. Marks' opinion is accompanied by a review of the evidence, including an

analysis of multiple medical records, Tr. 344, a clinical interview, Tr. 345-46, and

examination results, Tr. 346-47, 349-52, including a score interpretation section,

Tr. 352-53.  The ALJ's finding that Dr. Marks' opinion does not contain an

explanation or citation to records is not supported by substantial evidence.

However, the error is harmless as the ALJ gave other supported reasons to reject

Dr. Marks' opinion.  *See Molina,* 674 F.3d at 1115.

Second, the ALJ found Dr. Marks' opinion was inconsistent with the

medical records.  Tr. 26.  Consistency is one of the most important factors an ALJ

must consider when determining how persuasive a medical opinion is.  20 C.F.R. §

416.920c(b)(2).  The more consistent the is with evidence from other medical

sources, the more persuasive the medical opinion is.  20 C.F.R. § 416.920c(c)(2).

The ALJ found Dr. Marks' opinion was inconsistent with records documenting

Plaintiff's generally normal mental status examinations.  Tr. 26 (citing Tr. 400,

441-42, 455, 476-77, 488-89, 564).  As discussed *supra,* the ALJ reasonably found

Dr. Marks' opinion is inconsistent with the treatment records.  *See Lingenfelter*,

504 F.3d at 1042; *Orn*, 495 F.3d at 631.

1        Third, the ALJ found Dr. Marks' IQ assessment and opinion was

2   inconsistent with the opinion of Dr. VanFossen.  Tr. 26.  Consistency is one of the

3   most important factors an ALJ must consider when determining how persuasive a

4   medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more consistent an opinion is

5   with evidence from other medical sources, the more persuasive the opinion is.  20

6   C.F.R. § 416.920c(c)(2).  While Dr. Marks diagnosed Plaintiff with borderline

7   intellectual functioning and found Plaintiff had marked and severe limitations, Tr.

8   348, Dr. VanFossen questioned the validity of the IQ test results and found

9   Plaintiff had no more than moderate limitations.  Tr. 26, 354.  He noted Dr. Marks

10  did not administer any effort testing, and the WAIS results contained multiple

11  inconsistencies, with some scores below the first percentile yet the impaired scores

12  were not reflected in other domains.  Tr. 354.  Dr. VanFossen stated Dr. Marks'

13  evaluation contains very little reference to functional impairment and focuses

14  heavily on past symptoms.  *Id.*  He also noted Dr. Marks did not provide normative

15  scores for the Trails tests thus the Trails data cannot be considered.  *Id.*  Dr.

16  VanFossen's opinion is consistent with the objective evidence for the reasons

17  discussed herein, including Plaintiff's numerous normal mental status

18  examinations in the record, and a lack of any other evidence to support a diagnosis

19  of borderline intellectual functioning.  The ALJ's finding that Dr. Marks' opinion

20  is inconsistent with Dr. VanFossen's opinion is a specific and legitimate reason,

1  supported by substantial evidence, to reject Dr. Marks' opinion.  *See Andrews v.*

2  *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

3      *2. Dr. VanFossen*

4      On August 25, 2017, Dr. VanFossen, a reviewing source, rendered an

5  opinion on Plaintiff's functioning.  Tr. 354-55.  Dr. VanFossen reviewed his own

6  2015 opinion, Dr. Marks' 2017 examination and opinion, and Dr. McCabe's 2016

7  examination.  *Id.*  Dr. VanFossen opined Dr. Marks' diagnosis of ADHD was not

8  well-supported by the evidence and opined the WAIS results were of "suspect

9  credibility at points," but opined the social phobia and substance-induced disorders

10 were supported by the evidence.  *Id.*  He further opined there is very little reference

11 to functional impairment, as the reported focused heavily on past symptoms, and

12 moderate ratings would be the best reflection of Plaintiff's functioning.  *Id.*  The

13 ALJ gave Dr. VanFossen's opinion some weight.  Tr. 26.

14     The ALJ found Dr. VanFossen's opinion that Plaintiff has no more than

15 moderate limitations was consistent with the overall record.  Tr. 26.  Plaintiff

16 argues the ALJ erred because Dr. VanFossen also opined Plaintiff had severe

17 limitations and argues Dr. VanFossen adopted Dr. Marks' 2017 opinion.  ECF No.

18 17 at 15 (citing Tr. 357-58).  However, the ALJ interpreted the documents that

19 follow Dr. VanFossen's opinion as separate documents that are not part of Dr.

20 VanFossen's opinion.  Tr. 26-27.  The ALJ's interpretation of the record is

reasonable.  The document Plaintiff references is not signed and is dated August 24, 2017.  Tr. 357-58.  The case was referred to Dr. VanFossen on August 24, and he completed his review on August 25, 2017.  Tr. 354.  Given the date on the document is the date of the referral, and one day before Dr. VanFossen's opinion date, the document appears to be the referral document from DSHS and not a part of Dr. VanFossen's opinion.  Further, the document's first page is a blank checkbox form, Tr. 356, which Dr. VanFossen later completed, Tr. 354.  Following the blank form is what appears to be a summary of Dr. Marks' examination and opinion, Tr. 357-64, as the checkbox responses are identical to Dr. Marks' responses, Tr. 348-49.  Defendant argues the document following Dr. VanFossen's opinion is not a part of his opinion, because the two opinions are clearly contradictory to one another, such as Dr. VanFossen's opinion that ADHD is not a supported diagnosis, Tr. 354, when the other document lists ADHD as a limiting diagnosis, Tr. 358.  ECF No. 18 at 14-15.  The ALJ reasonably found that Dr. VanFossen's opinion consists of only pages 11 and 12 of Exhibit 3F, and that the pages following page 12 are not a part of the opinion.  Thus, the ALJ did not reject any marked or severe limitations from Dr. VanFossen as Plaintiff argues, and the ALJ did not err in his consideration of Dr. VanFossen's opinion.

    *3.  Mr. Albin*

ORDER - 28

1    On March 26, 2018, Mr. Albin, a treating counselor, opined Plaintiff suffers

2    depression-related impairments such as an inability to focus long enough to sustain

3    an eight-hour workday.  Tr. 514.  The ALJ found Mr. Albin's opinion is not

4    persuasive.  Tr. 27.

5    First, the ALJ found Mr. Albin's opinion was not supported by an

6    explanation and appears to be based on self-report.  *Id.*  Supportability is one of the

7    most important factors an ALJ must consider when determining how persuasive a

8    medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more supporting

9    explanations that support a medical opinion, the more persuasive the medical

10   opinion is.  20 C.F.R. § 416.920c(c)(1).  Mr. Albin stated Plaintiff has made

11   considerable progress with treatment, and his measures for depression are now

12   below clinical levels.  Tr. 514.  However, he stated Plaintiff remains unable to

13   focus long enough to sustain an eight-hour workday.  *Id.*  Mr. Albin's opinion does

14   not contain any further explanation or citations to support his opinion.  As

15   Plaintiff's depression was below clinical levels, and Mr. Albin's opinion does not

16   contain any explanation, the ALJ's finding that Mr. Albin's opinion is not

17   supported by an explanation and appears to be based on Plaintiff's self-report is a

18   germane reason supported by substantial evidence to reject Mr. Albin's opinion.

19   *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  Plaintiff argues

20   the ALJ erred because Mr. Albin's opinion is supported by the treatment records,

ORDER - 29

1  ECF No. 17 at 16, however the ALJ reasonably found Mr. Albin's opinion is

2  inconsistent with the treatment records as discussed *infra*.

3          Second, the ALJ found Mr. Albin's opinion is not consistent with the

4  treatment records. Tr. 27. Consistency is one of the most important factors an

5  ALJ must consider when determining how persuasive a medical opinion is. 20

6  C.F.R. § 416.920c(b)(2). The more consistent the is with evidence from other

7  medical sources, the more persuasive the medical opinion is. 20 C.F.R. §

8  416.920c(c)(2). The ALJ found Mr. Albin's opinion was inconsistent with records

9  documenting Plaintiff's normal concentration and attention, reported improvement

10  with medication, and his ability to play poker, and watch television and movies.

11  Tr. 27 (citing Tr. 352, 398, 404, 417, 419, 469-70, 514). Plaintiff argues the

12  records are consistent with Mr. Albin's opinion, but Plaintiff points almost entirely

13  to Plaintiff's self-reported symptoms, and to minimal objective evidence of

14  ongoing symptoms. ECF No. 17 at 17. Mr. Albin's records largely contain

15  Plaintiff's self-reported symptoms and limitations, but also contain notes regarding

16  Plaintiff having normal grooming, speech, and thoughts, and Plaintiff reporting

17  improvement with treatment, Tr. 187, 252, 263, 270, 291. The ALJ's finding that

18  Mr. Albin's opinion is inconsistent with the objective medical evidence is a

19  germane reason, supported by substantial evidence, to reject Mr. Albin's opinion.

20

ORDER - 30

*See Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 20, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 31